PALMETTO FIRE INS. CO. v. BEHA, Superintendent of Insurance of New York.

(District Court, S. D. New York. November 10, 1925. On Reargument July 14, 1926.)

1. Courts ⚖═303(2)—Federal court held to have jurisdiction to enjoin state superintendent of insurance from revoking license of foreign insurance company.

Suit to enjoin superintendent of insurance of New York from revoking license of foreign insurance company *held* to be against defendant as state officer, and not against state, within Const. Amend. 11, as suit by citizen of one state against another state, and hence federal court was not without jurisdiction.

2. Courts ⚖═303(1)—Immunity of state from suit may be waived in case otherwise within jurisdiction of federal court.

Immunity of state from suit, under Const. Amend. 11, is personal privilege, and may be waived in case otherwise within jurisdiction of federal court.

3. States ⚖═191(1)—State may not be sued by one of its own citizens without consent, even in its own courts, and even on cause arising under federal Constitution and laws.

A state cannot be sued, even in its own courts, by one of its own citizens without its consent, and such suit cannot be brought in its own courts, even on cause of action arising under Const. art. 3, § 2, and laws of the United States.

4. Courts ⚖═303(2)—Prohibition of suits in federal court against state without consent held not to preclude action against state officer.

Prohibition by Const. Amend. 11, of suits in federal courts against state without its consent,

does not preclude action against state officer, unless state is real party in interest.

5. Courts ⚖═303(2)—Suit to restrain state officer from action under invalid statute held not suit against state, and is within federal jurisdiction.

Suit to restrain state officer from acting under statute which is charged to violate constitutional rights is not suit against state, and is within federal jurisdiction.

6. Corporations ⚖═636—State may regulate business which is affected with public interest transacted within its borders.

States may regulate business which is affected with public interest, when transacted within their borders, whether by domestic or foreign corporation.

7. Commerce ⚖═45.

Business of interstate insurance is not interstate commerce, and as such is not beyond state regulations.

8. Insurance ⚖═3—State may determine who may engage in interstate insurance business within its boundaries, and regulate business and persons engaged therein.

Business of interstate insurance is quasi public in character, and within right of state to determine who may engage in it within its boundaries, and on what terms and conditions it is to be conducted, and to regulate business and all persons engaged in it.

9. Insurance ⚖═18—State has power to exclude foreign insurance companies or impose conditions precedent to right to do business within its limits.

The state has power, either wholly to exclude foreign insurance company from doing business within its limits, or to impose on it terms and conditions as condition precedent to its right to do business within its limits.

10. Constitutional law ⚖═276—Forbidding by state of contracts of insurance between citizen and corporation in another state would be unlawful invasion of liberty of contract.

State cannot forbid contracts of insurance relating to risks within its limits from being made between citizen and corporation in another state for such attempt would be unlawful invasion of citizen's liberty of contract, under Const. Amend. 14.

11. Licenses ⚖═1—"License" is merely privilege; it is issuable for both regulation and revenue, and its purpose is to prevent conduct of business in manner detrimental to public interest.

A "license" is merely permit or privilege to do what otherwise would be unlawful; its purpose being to regulate and control manner in which business is conducted, and prevent its being carried on in such way as to injure public interest. It may be issued for both regulation and revenue, and is a mere privilege, and not a contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, License.]

**12. Insurance ⬤20—License to foreign fire insurance company held subject to revocation for cause.**

License to foreign fire insurance company to transact business in New York, issued under Insurance Law N. Y. § 110 et seq., expressly providing that it might be revoked by superintendent of insurance, *held* subject to revocation for cause, even without express reservation of statute.

**13. Insurance ⬤20—License of foreign fire insurance company cannot be revoked arbitrarily, though statute gives discretionary power.**

License to foreign fire insurance company to do business within New York, issued under Insurance Law N. Y. § 110 et seq., cannot be revoked arbitrarily, even though revoking authority is by statute given a discretionary power, but it must be for cause shown.

**14. Insurance ⬤16, 20—Contract of insurance of foreign fire insurance company in another state held not doing business in state where licensed contrary to its laws, and hence was not cause for cancellation of its license.**

Foreign fire insurance company, authorized to do business in New York, entered into contract with sales company in Michigan to insure automobiles, insurance to take effect only when automobile was sold to retail purchaser, *held*, that company, in insuring in Michigan an automobile owned in New York by resident thereof, was not doing business in New York contrary to its laws, and hence there was no legal cause for cancellation of its New York license.

**15. Corporations ⬤642(4)—Generally foreign corporation does not do business in state solely by entering into contracts with residents, which are made and to be performed elsewhere.**

Generally a foreign corporation is not doing business in a state by entering into contracts with residents thereof, where contracts are made and to be performed elsewhere, although·they relate to property within state.

**16. Insurance ⬤16—Foreign insurance company held not doing business in state, where agent obtains and forwards application for its acceptance or rejection at place outside state.**

Where applications for insurance are obtained in state by agent of foreign company and forwarded by him for acceptance or rejection to company at place outside· state, it is not doing business in state wherein applicants reside by accepting and issuing policies in pursuance thereof at such outside office.

**17. Courts ⬤8.**

A state cannot by its statutes control or impair transactions which are extraterritorial.

**18. Insurance ⬤125(2).**

A policy of insurance is not invalid, which is issued in Michigan to a citizen of New York on property in latter state.

**19. Insurance ⬤17—Foreign fire insurance company, authorized to do business in New York, held not to have violated New York laws as to impairment of capital and surplus.**

Foreign fire insurance company authorized to do business in New York *held* not to have so subjected itself and capital and surplus to liability greatly in excess thereof in violation of New York laws.

**20. Insurance ⬤17.**

Foreign fire insurance company *held* not to have written policies of insurance against theft without charter authority therefor.

**21. Insurance ⬤20—State held without authority to revoke foreign fire insurance company's certificate because of business with residents of objecting state, written in another state, in manner consistent with latter state's laws.**

While state may exclude from its boundaries a foreign corporation not engaged in interstate or foreign commerce, if it licenses it to do business within its territory, it cannot thereafter revoke license because it does business in some other state in manner consistent with its laws, and makes contracts there with residents of objecting state, laws of which have not restricted such residents' freedom of contract.

On Reargument.

**22. Insurance ⬤156(4).**

Insurance may be taken out for whom it may concern.

**23. Insurance ⬤16—Acquiescence by purchasers of automobiles in sale contract, which ipso facto gave them insurance under agreement made in foreign state, held not procuring of insurance in New York.**

Where foreign fire insurance company authorized to do business in New York entered into contract with sales company in Michigan to insure automobiles, insurance to be effective only when they were sold to retail purchaser, mere acquiescence by purchaser in New York in sale contract, which ipso facto gave him insurance under the agreement, *held* not to be a procuring of insurance in New York.

**24. Insurance ⬤125(2)—Contract of foreign fire insurance company in Michigan to insure automobiles, when sold to retail purchaser, may be construed as contract made in foreign state for benefit of third party.**

A contract by a foreign insurance company, authorized to do business in New York, with sales company in Michigan, to insure automobiles, insurance to be effective only when automobile was sold to retail purchaser, may be construed as contract made in a foreign state for benefit of a third party.

In Equity. Action by the Palmetto Fire Insurance Company against James A. Beha, as Superintendent of Insurance of the State of New York. Decree for plaintiff.

Hartwell Cabell, of New York City (Milton B. Ignatius, of New York City, and

James M. Lown, Jr., of Penn Yan, N. Y., of counsel), for plaintiff.

Albert Ottinger, Atty. Gen. (Claude T. Dawes and Joseph C. H. Flynn, Deputy Attys. Gen., and Clarence C. Fowler, Sp. Deputy Atty. Gen., of counsel), for defendant.

Rumsey & Morgan, of New York City, for New York Fire Ins. Rating Organization, amicus curiæ.

Before ROGERS, Circuit Judge, and HAND and KNOX, District Judges.

ROGERS, Circuit Judge. This suit is brought to enjoin the superintendent of insurance of the state of New York from revoking a license which he had granted to the Palmetto Fire Insurance Company, a South Carolina corporation, authorizing it to transact within the state of New York the business of fire insurance as provided in the Insurance Law of the state (Consol. Laws, c. 28).

[1] While this is a suit solely against the defendant Beha, and against him as superintendent of insurance, it appears that the Governor of the state of New York and the Attorney General, as well as the superintendent of insurance, were served with the subpœna and a copy of the bill of complaint and of the order to show cause. These officials all appeared specially, and not otherwise. They filed what they call "Suggestion to the Honorable Federal Judges." In it they set forth that the suit is in fact and according to the law of the land one against the sovereign state of New York and the people thereof, and that, as it was brought by a citizen of another state, it was in violation of and contrary to the Constitution of the United States, and that this court therefore is without jurisdiction to entertain the suit and without power to grant the relief which is asked.

We shall at once consider the question of jurisdiction, for if the court is without jurisdiction, we can do nothing but dismiss the bill. Prior to the Eleventh Amendment, the judicial power was held to extend to a suit by a citizen of one state against another state; such suit being within the original jurisdiction of the Supreme Court, Chisholm v. Georgia, 2 Dall. 419, 1 L. Ed. 440. But this led to the adoption of the Eleventh Amendment, since which time the federal judicial power does not extend to suits against a state brought by a citizen of another state. Carolina Glass Co. v. South Carolina, 240 U. S. 305, 36 S. Ct. 293, 60 L. Ed. 658.

[2] This immunity from suit is a personal privilege, and may be waived in a case otherwise within the jurisdiction of the court. Gunter v. Atlantic Coast Line R. Co., 200 U. S. 273, 26 S. Ct. 252, 50 L. Ed. 477. In this action it not only has not been waived, but is earnestly asserted. The Eleventh Amendment reads: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state. * * *" And section 2 of article 3 provides that "in all cases affecting ambassadors * * * and those in which a state shall be party, the Supreme Court shall have original jurisdiction."

[3] The state of New York is not a party to this proceeding. It is elementary that a state cannot be sued, even in its own courts, by one of its own citizens, without its consent, and such a suit cannot be brought in its own courts, even on a cause of action arising under the Constitution and laws of the United States. Hans v. Louisiana, 134 U. S. 1, 10 S. Ct. 504, 33 L. Ed. 842; North Carolina v. Temple, 134 U. S. 22, 10 S. Ct. 509, 33 L. Ed. 849.

[4, 5] The prohibition of suits in the federal courts against a state without its consent does not, however, preclude an action against a state officer, unless such officer is only a nominal defendant and the state is the real party in interest. Carolina Glass Co. v. South Carolina, supra. And it is well-settled law that a suit to restrain a state officer from acting under a statute which it is charged violates the Constitution of the United States, or otherwise violates constitutional rights, is not a suit against the state, and is within the federal jurisdiction. Looney v. Crane Co., 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230; Louisville & N. R. Co. v. Greene, 244 U. S. 522, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; Hopkins v. Clemson Agricultural College, 221 U. S. 634, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Gunter v. Atlantic Coast Line R. Co., 200 U. S. 273, 26 S. Ct. 252, 50 L. Ed. 477; Herndon v. Chicago, R. I. & P. R. Co., 218 U. S. 135, 30 S. Ct. 633, 54 L. Ed. 970; Western Union Telegraph Co. v. Andrews, 216 U. S. 165, 30 S. Ct. 286, 54 L. Ed. 430.

In Looney v. Crane Co., supra, which was a suit to enjoin the Attorney General of Texas from enforcing an unconstitutional tax, it was contended that the United States District Court in Texas was without jurisdiction, on the ground that it was in substance a suit against the state. The Supreme Court, speaking through Chief Justice White, thus disposed of the contention:

"There is a contention to which we have hitherto postponed referring, that the court below was without jurisdiction because the suit against the state officers to enjoin them from enforcing the statutes in the discharge of duties resting upon them was in substance and effect a suit against the state within the meaning of the Eleventh Amendment. But the unsoundness of the contention has been so completely established that we need only refer to the leading authorities, Ex parte Young, 209 U. S. 123 [28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764]; Western Union Telegraph Co. v. Andrews, 216 U. S. 165 [30 S. Ct. 286, 54 L. Ed. 430]; Home Telephone & Telegraph Co. v. Los Angeles, 227 U. S. 278 [33 S. Ct. 312, 57 L. Ed. 510]."

The suggestion that the court is without jurisdiction to hear and determine this case must be dismissed, as without merit.

The Palmetto Fire Insurance Company, a corporation created under the laws of the state of South Carolina, has its principal place of business in Sumter, in that state. Its capital stock, at the time it was incorporated in 1912, was $25,000; but it has since been gradually increased, until now it is fixed at $400,000. Its charter did not in terms expressly authorize insurance against theft. The record contains the affidavits of its president and its vice president, the latter being also one of the attorneys of the Palmetto Company. From these it appears that the officers honestly believed that its charter was broad enough to cover the writing of theft insurance. Subsequently the question was raised whether, after all, there was power to write such insurance, and the charter was amended as of August 1, 1925, which authorized it to write theft insurance as well as fire insurance.

The Chrysler Corporation, which seems to be a Michigan corporation, with its principal place of business in Detroit, manufactures the Chrysler cars. The Chrysler Sales Corporation is a corporation created under the laws of the state of Michigan, with its main office in the city of Detroit. It purchases the entire output of the Chrysler Corporation and markets the same. The Sales Corporation, having a certain list price upon each type of Chrysler car, sells the cars for cash to distributors throughout the country on the basis of the list price, less a given discount, plus the war tax, and plus certain delivery charges. The distributor likewise sells to the dealer on the basis of the list price, less a smaller discount, plus the war tax and delivery charges.

The Chrysler Sales Corporation insures all Chrysler cars sold by it against loss by fire, transportation, and theft. This it does under an agreement with the Palmetto Fire Insurance Company, whereby every car manufactured and sold by the Chrysler Sales Corporation is immediately and automatically insured in Detroit in a regular automobile policy issued by the Palmetto Company. The policy assures the Chrysler Sales Corporation "and/or for account of whom it may concern." It becomes effective only when a car is sold to a retail purchaser.

The Palmetto Company, on receipt at its Detroit office of an information blank filled in by the Chrysler Sales Corporation, giving the purchaser's name, residence, car number, and name of the finance concern, if any, issues to each purchaser a certificate showing the car was insured under what is known as master policy 9562, and the insurance on the said car then applies for account of the purchaser and the holder of the sales contract named in the certificate.

The premium on each car is paid in Detroit by the Chrysler Sales Corporation, and that corporation receives no commission from any one or in any way therefor; and the dealer, when selling a car, sells it at the price fixed by the Sales Corporation, and he collects no commission on any part of the insurance carrying charge. In selling Chrysler cars, no deviation from the price to be charged can be made, because no insurance is desired by the purchaser. If the purchaser desires insurance from some other insurance company, he is at liberty to procure it.

The Commercial Credit Company is a corporation organized under the laws of the state of Delaware, with its principal office in Baltimore, Md. It is disclosed that there is a Commercial Credit Corporation at New York City, a Commercial Credit Trust at Chicago, and a Commercial Credit Company, Inc., at New Orleans. These all appear to be affiliated companies, and they may operate in financing the retail sale or lease of Chrysler cars. This means that they purchase or loan upon, or otherwise acquire, the notes or securities given to dealers in connection with the purchase or lease of Chrysler cars at retail.

The insurance is effected by an open policy running from the Palmetto Fire Insurance Company to the Chrysler Sales Corporation. The policy is executed in Detroit, where the

principal office of the Sales Corporation is located, and where the insurance company maintains a general agency. It insures all Chrysler six-cylinder, four-cylinder, and commercial cars which may be sold during the policy year, beginning July 1, 1925. The policy covers the full retail purchase price for the term of one year from the date of the sale to the purchaser. By the terms of the policy the Sales Corporation is entitled to a certificate in its name for the account of whom it may concern, whenever a car is reported to it as having been sold at retail. The certificate names the purchaser and is sent to him, and in counterparts to others who have an equity in the car, such as finance companies and banking concerns discounting purchase-money notes.

The contract existing between the Palmetto Company and the Chrysler Sales Corporation under which the insurance company issues certificates of insurance upon Chrysler cars is the important, but not the sole, ground for the threatened revocation of the license heretofore granted, authorizing the Palmetto Company to do business in the state of New York. In carrying out that contract the superintendent of insurance of the state of New York claims that the Palmetto Company is violating the laws and public policy of New York. Whether this claim is justified is the question we must determine.

[6-8] The power of a state to regulate business which is affected with a public interest, when transacted within its borders, whether by a domestic or a foreign corporation, is not open to question. That the business of interstate insurance is not interstate commerce and as such is not beyond state regulation, has long been settled. Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357. But the business is quasi public in character, and within the right of the state to determine who may engage in it within its boundaries, and upon what terms and conditions the business is to be conducted. It may regulate the business and all persons engaged in it.

In German Alliance Insurance Co. v. Lewis, 233 U. S. 389, 405, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189, it was argued that the business of fire insurance is a private business, and that there is no constitutional power in a state to fix rates and charges for services rendered by it. The argument was set aside as unsound, and in a carefully considered and extended opinion by Mr. Justice McKenna the court sustained the constitutionality of the Kansas statute regulating fire insurance rates. In the statutes of every state in the Union superintendence and control over the business of insurance are exercised. "Those regulations," said the court in the Lewis Case, "exhibit it to be the conception of the law-making bodies of the country, without exception, that the business of insurance so far affects the public welfare as to invoke and require governmental regulation."

[9] The state has power, either wholly to exclude a foreign insurance company from doing business within its limits, or to impose on it such terms and conditions as it deems proper as a condition precedent to its right to do business within its limits. Whitfield v. Ætna Life Insurance Co., 205 U. S. 489, 27 S. Ct. 578, 51 L. Ed. 895; Carroll v. Greenwich Ins. Co., 199 U. S. 401, 26 S. Ct. 66, 50 L. Ed. 246; Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. Ed. 569.

[10] The state cannot forbid contracts of insurance relating to risks within its limits from being made between a citizen and a corporation in another state. Ætna Life Insurance Co. v. Dunken, 266 U. S. 389, 397, 45 S. Ct. 129, 69 L. Ed. 342; New York Life Insurance Co. v. Dodge, 246 U. S. 357, 373, 38 S. Ct. 337, 62 L. Ed. 772, Ann. Cas. 1918E, 593; New York Life Insurance Co. v. Head, 234 U. S. 149, 34 S. Ct. 883, 58 L. Ed. 1266; Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832; Nutting v. Massachusetts, 183 U. S. 553, 557, 22 S. Ct. 238, 46 L. Ed. 324; Delamater v. South Dakota, 205 U. S. 93, 102, 27 S. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733; Provident Savings Association v. Kentucky, 239 U. S. 103, 114, 36 S. Ct. 34, 60 L. Ed. 167, L. R. A. 1916C, 572; Adams v. Tanner, 244 U. S. 590, 595, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973. An attempt of that kind would be an unlawful invasion of the citizen's liberty of contract under the Fourteenth Amendment.

The Palmetto Fire Insurance Company, being a South Carolina corporation, in 1918 applied for a license to do business in the state of New York, and on December 6th of that year such license was issued to it by the superintendent of insurance. It recited that the company had "complied with all the requirements of law," and that it was "authorized to transact within this state the business of fire insurance as provided by article 3 of the Insurance Law, until April 30, 1919." This license was renewed up to and including April 30, 1923. About that time it gave notice to the superintendent of insur-

ance that it intended to retire from the state of New York; but on December 9, 1924, it again applied to the superintendent of insurance, and a license was granted to it on December 20, 1924, which again recited that the company had "complied with all the requirements of law." On May 1, 1925, the superintendent of insurance again granted to the company a license to transact within the state of New York the business of fire insurance until May 1, 1926. That license is still in full force and effect.

The New York statute gives to the superintendent of insurance the power to revoke a license issued to a foreign corporation, authorizing it to do business in the state. It provides as follows: "Whenever in the judgment of the superintendent of insurance it will best promote the interests of the people of this state, he may, after a hearing on notice, revoke the certificate of authority of a foreign corporation to do business in this state, prior to its expiration under this section. The action of the superintendent of insurance in revoking the certificate of authority of a foreign corporation shall be subject to review by writ of certiorari." Insurance Law, § 32.

[11, 12] A license is merely a permit or privilege to do what otherwise would be unlawful. The purpose of it is to regulate and control the manner in which the business is conducted, and prevent its being carried on in such a way as to injure public interests. And it may be issued for both regulation and revenue. A license is a mere privilege, and is not a contract. Metropolitan Excise Board v. Barrie, 34 N. Y. 657; Burgess v. Brocton, 235 Mass. 95, 126 N. E. 456; Balling v. Elizabeth Excise Board, 79 N. J. Law, 197, 74 A. 277. It is not a property right. Jones v. Motley, 78 Ala. 370; Voight v. Newark Excise Board, 59 N. J. Law, 358, 36 A. 686, 37 L. R. A. 292; Public Service Commission v. Booth, 170 App. Div. 590, 156 N. Y. S. 140, affirmed in (Sup.) 155 N. Y. S. 568. And it has been held not to create a vested right. Laing v. Americus, 86 Ga. 756, 13 S. E. 107; State v. Cote, 122 Me. 450, 120 A. 538; Newson v. Galveston, 76 Tex. 559, 13 S. W. 368, 7 L. R. A. 797; Littleton v. Burgess, 14 Wyo. 173, 82 P. 864, 2 L. R. A. (N. S.) 631. It appears that the license herein involved authorized the Palmetto Fire Insurance Company to transact business in the state of New York "as provided by" the Insurance Law of New York, and as that law expressly provided that the license might be revoked by the superintendent of insurance

prior to the expiration of the time for which it was issued, the fire insurance company took its license upon that understanding. But, if power of revocation had not been expressly reserved, we think it nevertheless might have been subject to revocation for cause.

[13] The revocation of the license, however, cannot be made arbitrarily, even though the revoking authority is by the statute given a discretionary power. It must be for cause shown. Klafter v. State Board of Examiners, 259 Ill. 1, 102 N. E. 193, 46 L. R. A. (N. S.) 532, Ann. Cas. 1914B, 1221. But the question which we must decide is not, however, whether the contracts made in Michigan are valid contracts of insurance. Neither is it whether the state of New York can deprive citizens of that state of the right to enter into contracts of insurance in some other state upon property situated in the state of New York. This it has not attempted by statute to do.

[14] We are not now concerned with the validity of the contract made between the Palmetto Fire Insurance Company and the Chrysler Sales Corporation, or the contract between the latter and the Commercial Credit Company. For the purposes of this case we may assume that those contracts are valid. What we must determine is whether this court at this time, has the right to restrain the superintendent of insurance of the state of New York, and thereby prevent him from revoking the license heretofore granted to the Palmetto Fire Insurance Company, a foreign corporation, and which authorizes it to do business in the state of New York.

It is alleged in the "Suggestion" submitted to the court by the state of New York that the Palmetto Company, in making application for, accepting, and retaining the licenses issued by the state, represented that, if granted the privilege of doing business in the state, it would conduct its business in accordance with the laws of New York, and that all of its transactions within the state would be lawful. It is further alleged that, having obtained its license, it thereafter, in violation of the laws of the state, "and for the purpose of cheating and defrauding the state of New York and the people thereof out of taxes and revenues on business transacted in the state of New York, entered into a plan of concerted action with the Chrysler Sales Corporation and others by which it agreed to issue insurance contracts to citizens of New York on all Chrysler automobiles sold in the state of New York under an instrument in writing in form and appearance being its

standard form of policy, but being in fact an instrument in writing made as part and parcel 'of said plan of concerted action to conceal and hide from the state of New York and the people thereof, and the citizens to whom it agreed to issue its certificates under said plan, the amounts received for premiums, and by so doing cheating and defrauding the state of New York and the people thereof out of taxes and revenues on whatever sums for premiums might be collected from citizens of this state under said plan."

Then it goes on to say that by entering into the plan above mentioned the insurance company has violated its charter and the laws of New York, and in attempting to carry out the said plan has destroyed completely its integrity with the state of New York and the people thereof, and on that account it is desired to hold the hearing provided for in the state's insurance statutes to determine "whether or not in the judgment of the superintendent of insurance it will best promote the interests of the people of the state of New York to revoke the certificate of authority of the Palmetto Fire Insurance Company."

In Allgeyer v. Louisiana, 165 U. S. 578, 583, 17 S. Ct. 427, 429, 41 L. Ed. 832, Mr. Justice Peckham, writing for the court, said: "There is no doubt of the power of the state to prohibit foreign insurance companies from doing business within its limits. The state can impose such conditions as it pleases upon *the doing of any business by those companies within its borders,* and unless the conditions be complied with the prohibition may be absolute."

And in Hooper v. California, 155 U. S. 648, 655, 15 S. Ct. 207, 210, 39 L. Ed. 297, Mr. Justice White said: "The state of California has the power to exclude foreign insurance companies altogether from her territory, whether they were, formed for the purpose' of doing a fire or a marine business. She has the power, if she allows any such companies to enter her confines, to determine the conditions on which the entry shall be made. And, as a necessary consequence of her possession of these powers, she has the right to enforce any conditions imposed by her laws as preliminary to the transaction of business within her confines by a foreign corporation, whether the business is to be carried on through officers or through ordinary agents of the company, and she has also the further right to prohibit a citizen from contracting within her jurisdiction with any foreign company which has not acquired

the privilege of engaging in business therein, either in his own behalf or through an agent empowered to that end. The power to exclude embraces the power to regulate, to enact and enforce all legislation in regard to things done within the territory of the state which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious to the fullest extent, subject always, of course, to the paramount authority of the Constitution of the United States."

Here again it was said that the state has power to enact and enforce all legislation in regard to things done within the territory of the state. Have the things herein complained of been done within the state of New York by the Palmetto Fire Insurance Company, so that the authorities of that state have the right to take cognizance thereof? If the Palmetto Fire Insurance Company, in the transaction of its business within the state of New York, does not violate the laws of New York, can its license to do business within a state be revoked because of the manner in which it conducts its business in some third state in which its business is validly conducted? That it seems to us is the question presented in this case.

At the argument our attention was called to Palmetto Fire Insurance Co. v. Harry L. Conn, 9 F.(2d) 202, decided by the United States District Court for the Southern District of Ohio, Eastern Division. The defendant in that case was the superintendent of insurance for the state of Ohio. In that case, as in this, the Palmetto Company sought an injunction to restrain the revocation of a license. The superintendent of insurance had licensed the Palmetto Company to do business in that state, which license he intended, to revoke, and on the same day the suit was brought did revoke, on the ground that the Palmetto Company, in issuing certificates of insurance in Michigan under its contract with the Chrysler Sales Corporation, in so far as such certificates applied to Chrysler cars sold in Ohio, violated the insurance laws of that state. It was contended by the plaintiff that the certificate was issued, not under an Ohio contract, but under a Michigan contract, validly made between the Chrysler · Sales Corporation and the Palmetto Company. The court, while it did not deny that the contract was a Michigan contract, said:

"However that may be, the transaction comes wholly within the provisions of section 5438, General Code of Ohio, which pro-

hibits an insurance company, legally authorized to transact business in Ohio, from writing, placing, or causing to be written or placed, insurance upon property situated or located in this state, except through a legally authorized agent in this state, who shall countersign all policies so issued and enter the payment of the premium upon his record. While this section is in furtherance of the state's taxing policy, it is nevertheless a valid provision with which the plaintiff must comply in order to do business in Ohio. * * * This, of course, does not affect the question of the right of a citizen of Ohio to buy insurance where he pleases and from whom he pleases, nor does it affect the right of a foreign insurance company to sell to a citizen of Ohio a Michigan contract of insurance; but, on the other hand, it does prevent an insurance company who has been admitted to do an insurance business in Ohio, from issuing policies upon property in Ohio upon any other terms or conditions than as named in the statute."

If the insurance laws of New York contained a similar provision to that above cited, prohibiting any insurance company authorized to do business in this state from insuring property within this state, except through a legally authorized agent in the state, the Conn Case would be an authority to support the defendant's contention that the relief sought should be denied. But our attention has not been called to such a provision in the New York law. The contention here seems to be that the Palmetto Company, in entering into a valid contract in Michigan with the Chrysler Sales Corporation, has in some way violated the laws and public policy of the state of New York, "and for the purpose of cheating and defrauding the state of New York, and the people thereof, out of taxes and revenues on business transacted in the state of New York, entered into a plan of concerted action with the Chrysler Sales Corporation and others, by which it agreed to issue insurance contracts to citizens of New York on all Chrysler automobiles sold in the state of New York under an instrument in writing in form and appearance being its standard form of policy, but being in fact an instrument in writing made as part and parcel of said plan of concerted action to conceal and hide from the state of New York and the people thereof, and the citizens to whom it agreed to issue its certificates under said plan, the amounts received for premiums, and by so doing cheating and defrauding the state of New York and the people

thereof out of taxes and revenues on whatever sums for premiums might be collected from citizens of this state under said plan."

[15, 16] At the time the Palmetto Company sought and obtained its license to do business in the state of New York, it undoubtedly became bound to transact its business in that state according to the laws of New York. In making the contract it did with the Chrysler Sales Corporation in Michigan, and in acting under it, it was not doing business in New York. The general rule is that a foreign corporation is not doing business in a state by entering into contracts with residents thereof, where the contracts are made and are to be performed elsewhere, although the contracts relate to property within the state; and where applications for insurance are obtained in a state by an agent of a foreign company, and forwarded by him for acceptance or rejection to a company at a place outside of the state, the company is not doing business in the state wherein the applicants reside by accepting and issuing policies in pursuance thereof at such outside office. Lamb v. Bowser, 14 Fed. Cas. 980, No. 8,009, 7 Biss. 372; Western v. Genesee Mutual Ins. Co., 12 N. Y. 258; Stone v. Old Colony St. R. Co., 212 Mass. 459, 99 N. E. 218; Clay Fire & Marine Ins. Co. v. Huron Salt & Lumber Mfg. Co., 31 Mich. 346; Connecticut River Mutual Fire Insurance Co. v. Way, 62 N. H. 622, 32 Cyc. 996.

The policy, which is issued at Detroit, Mich., under the plan insures the Chrysler Sales Corporation on cars sold, together with others who may have an interest therein, including the ultimate purchaser in New York, who pays no premium, but can take advantage of the insurance, if he chooses to avail himself of it. No renewal of the policy is allowed. It amounts to a gift of insurance for one year, if the ultimate purchaser of a Chrysler car sees fit to avail himself of it. The state of New York, if it has the constitutional right to prohibit the transaction, has not done so. As the transaction is valid in Michigan, and is not invalid in New York, it affords, in our opinion, no legal cause for the cancellation of the Palmetto Company's license to do business in New York.

The superintendent of insurance disapproves the Chrysler-Palmetto plan, and regards it as in violation of the laws and public policy of the state of New York. The insurance effected under the plan is effected in Michigan, and not in New York. We know of nothing in the law of New York which prohibits the owner of a Chrysler car in New

York from accepting insurance upon the car effected under a Michigan contract. And the Palmetto Company, in insuring in Michigan a Chrysler car owned in New York by a resident thereof, is not doing business in the latter state, and therefore is not as to such contracts doing business in New York and contrary to its laws.

[17] The state of New York cannot by its statutes control or impair transactions which are extraterritorial. In Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832, the Supreme Court had before it a statute enacted by the Legislature of Louisiana, which subjected to fine any person or firm who should fill out, sign, or issue in the state of Louisiana any certificate of insurance under an open marine policy, or who in any manner whatsoever should do any act in the state to effect for himself or for another, insurance on property then in the state, in any marine insurance company which had not complied with the laws of the state. The court held the statute unconstitutional.

[18] A policy is not invalid which is issued in the state of Michigan to a citizen of New York upon property in the latter state. See Baker v. Spaulding, 71 Vt. 169, 42 A. 982; Pennypacker v. Capital Insurance Co., 80 Iowa, 86, 45 N. W. 408, 8 L. R. A. 236, 20 Am. St. Rep. 395; Phenix Insurance Co. v. Pennsylvania R. Co., 134 Ind. 215, 33 N. E. 970, 20 L. R. A. 405; Strampe v. Farmers' Mutual Insurance Co., 109 Minn. 364, 123 N. W. 1083, 26 L. R. A. (N. S.) 999, 134 Am. St. Rep. 781; Clay Fire & Marine Ins. Co. v. Huron Salt & Lumber Mfg. Co., 31 Mich. 346; Columbia Fire Ins. Co. v. Kinyon, 37 N. J. Law, 33, 36.

A resident in New York solicited, by letter addressed to a Massachusetts corporation in that state and not authorized to do business in New York, a policy of insurance on property in New York. The Massachusetts company accepted the proposal and mailed the policy. The New York Court of Appeals said of this transaction: "This resulted, not in the transaction of business in New York, but in the consummation in Massachusetts of a contract which was lawful in New York. Huntington v. Sheehan, 206 N. Y. 486, 489, 100 N. E. 41. And see Stone v. Penn Yan, K. P. & B. Ry., 197 N. Y. 279, 90 N. E. 843. And the New York courts have said that the Legislature has no power to prohibit a resident of New York entering into a contract with a corporation of another state having a right to do business therein, as a law of one state which interferes with the constitutional right of an insurance company of another state to make them would be void or to that extent unconstitutional. Hammond v. International R. Co., 63 Misc. Rep. 437, 116 N. Y. S. 854, affirmed 134 App. Div. 995, 119 N. Y. S. 1127.

[19] The superintendent of insurance states that according to its last annual report the capital and surplus of the Palmetto Fire Insurance Company did not exceed $663,000. He states that the company, by the Palmetto-Chrysler plan, has subjected itself and its capital and surplus to a liability greatly in excess thereof and in violation of the laws of New York, which provide that such a corporation shall not expose itself on any one loss or any one risk or hazard to an amount exceeding 10 per centum of its capital and surplus. The law of New York is as he states it. But his statement that the company has violated the New York law in the particular mentioned is unsupported by any evidence and is directly contradicted by the president of the company. In his sworn statement he flatly denies that his company has in any way impaired its capital and surplus by reason of the Palmetto-Chrysler contract. He adds that "as a matter of fact the said contract will in the opinion of deponent prove quite profitable, and this is borne out by the experience so far under said contract. That while a large number of automobiles will be insured, no one risk is in excess of 10 per centum of the capital of the said corporation, the maximum liability on any one car being $2,195, and the minimum on any one car being $995. The cars insured are owned by individual owners scattered throughout the United States; there is no conflagration hazard; that the cars are owned largely by the better class of citizens; the moral hazard is good, and no car is insured, unless equipped with an approved lock device, and only insured for one year from date of purchase, without any renewal privilege."

And the vice president of the company in his sworn statement denies that it has impaired its capital or surplus by the Palmetto-Chrysler contract. He states that in his opinion the contract is advantageous "and will prove profitable, and certainly the experience so far under said contract bears this opinion out; that no one hazard exceeds 10 per cent. of the capital and surplus of the said Palmetto Fire Insurance Company or approaches this percentage; on the contrary, automobiles covered being scattered throughout the United States, practically

only one automobile at a time being subject to any one fire or theft; that it is highly desirable business, being written for only one year from the sale of said car; the car being of the better class and being purchased by the better class of citizens throughout the country, the moral hazard is of the best."

We think that no justification is shown for thinking that the assets and resources of the Palmetto Fire Insurance Company are not ample and sufficient to guarantee the performance of all its obligations. It is not doubted that, if an examination into its financial condition discloses its condition is such that its transaction of business in New York will be hazardous to its policy holders, or to its creditors, or to the public, its license may be revoked. While there is nothing in this record which discloses that the company is in such financial condition, this court does not think it should now interfere to prevent any investigation into that subject which the superintendent of insurance thinks it his duty to institute.

The superintendent of insurance demanded that the Palmetto Company turn over to it a certain contract of June 11, 1925. Its officers state under oath that they have never had such contract, and have never read it, and that the contents are unknown to them. He also states that, in an investigation he directed to be made into the Chrysler-Palmetto plan, his examiners reported to him that the Palmetto Company refused to give information as to the premium rates on such business. But the president of the insurance company in a sworn statement denies that it has at any time refused to furnish the department with any information the department requested and which was in the power of the company to furnish; and the vice president of the company in a sworn statement declares that its representatives had informed the department that they would furnish at any time all information it requested which was within their power to give. We do not now undertake to adjudge whether the insurance company is withholding information which is within its power and duty to give.

[20] It appears that the superintendent of insurance complains that the Palmetto Company has written policies of insurance against theft under a charter which did not give it such authority. If the Palmetto Company had no power under its original charter to insure against theft, the state of South Carolina, which created it, has jurisdiction to call it to account. Whether under the laws of that state its courts would hold that the broad powers granted to it, in its original charter, were sufficiently broad to warrant its insurance against theft, we do not know, and are not called upon to decide. The officers of the company honestly thought they could lawfully write such insurance, but, as they found some doubt was entertained as to their right to do this, they had the charter amended and the power expressly conferred. We do not think that the doubt as to the existence of the right of the Palmetto Company to write theft insurance under its original charter, now that the charter has been amended and the power conferred, constitutes a legal ground for the revocation at this time of the license to do business in the state of New York, especially as it does not appear that it ever wrote such insurance "willfully" in the state of New York.

[21] We are satisfied that while a state, for reasons satisfactory to itself, may exclude from its boundaries a foreign corporation not engaged in interstate or foreign commerce, if it licenses it to do business within its territories it cannot thereafter revoke the license because it does business in some other state in a manner consistent with its laws, and makes contracts there with residents of the objecting state, the laws of which have not restricted such residents' freedom of contract. It has been held that a state has the right to exclude any foreign corporation not engaged in interstate or foreign commerce, and can impose such conditions and limitations upon its right to do business within the state as it sees fit. Opinion of Justices, In re, 97 Me. 590, 55 A. 828. And in Doyle v. Continental Insurance Co., 94 U. S. 535, 541, 24 L. Ed. 148, the court said:

"A license to a foreign corporation to enter a state does not involve a permanent right to remain * * *. Full power and control over its territories, its citizens, and its business belong to the state. If the state has the power to do an act, its intention or the reason by which it is influenced in doing it cannot be inquired into. * * * If the act of an individual is within the terms of the law, whatever may be the reason which governs him, or whatever may be the result, it cannot be impeached. The acts of a state are subject to still less inquiry, either as to the act itself or as to the reason for it. The state of Wisconsin, except so far as its connection with the Constitution and laws of the United States alters its position, is a sovereign state, possessing all the powers of the most absolute government in the world."

In the Doyle Case the court reaffirmed Home Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365, and held that a state law was not unconstitutional which revoked a license to a foreign corporation to do business within the state because, while doing only a domestic business in the state, it resorted to the federal court sitting in the state; but the Morse Case and the Doyle Case in so holding have been overruled, and the law is now established in accordance with the views of the minority judges in those cases. Terral v. Burke Construction Co., 257 U. S. 529, 533, 42 S. Ct. 188, 66 L. Ed. 352, 21 A. L. R. 186.

Counsel may present a decree enjoining the defendant, as superintendent of insurance of the state of New York, from revoking the license issued to the Palmetto Fire Insurance Company authorizing it to do business in the state of New York, on the ground that the Chrysler-Palmetto plan and the insurance written in accordance therewith in the state of Michigan constitute a violation of the laws and public policy of the state of New York.

### On Reargument.

AUGUSTUS N. HAND and KNOX, District Judges. [22] After a reargument of this case, we are not satisfied that our former decision was erroneous. Insurance may be taken out for whom it may concern. This has been common enough in marine risks. Hagan v. Scottish Union Ins. Co., 186 U. S. 423, 22 S. Ct. 862, 46 L. Ed. 1229. The doctrine has been extended to inland fire risks (Marqusee v. Hartford Fire Ins. Co., 198 F. 475, 119 C. C. A. 251, 42 L. R. A. [N. S.] 1025) though the English courts do not seem to have gone that far (Grover v. Matthews, [1910] 2 K. B. 401). It has been further applied to contracts for insurance on anticipated risks. Hooper v. Robinson, 98 U. S. 528, 25 L. Ed. 219; Hoffman v. Ætna Ins. Co., 32 N. Y. 405, 88 Am. Dec. 337; also opinion of Judge Betts in Henshaw v. Mutual Safety Ins. Co., Fed. Cas. No. 6,387.

[23] In the present case the purchasers of Chrysler cars could have had no insurable interest at the time the contract was made with the Palmetto Company in Michigan. Their interest would come into being whenever they might purchase cars and thereby come within the arrangement for insurance involved in the transaction. The question is whether the dealer, by explaining the transaction to the purchaser, forwarding his name with the amount paid for the car, in which the insur-

ance premium had been taken into account in the charge, was effecting or procuring insurance in this state within the meaning of the statute. Under the decision of Lumbermen's Mutual Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810, it may be that the Palmetto Company, in adjusting losses, will be doing business in the state of New York for the purpose of service of process and taxation, but no such course of business has been shown to have occurred. It is going farther, however, to say that the retailer is the agent of a company which neither directs nor pays him, nor has anything to do with him.

[24] The question is one of the construction of the New York statute rather than of constitutional law, and we hold that the fact of acquiescence by the purchasers of Chrysler cars in a contract of sale which ipso facto gives them insurance protection under an agreement made in Michigan between the Chrysler Company and the plaintiff does not involve an effecting or procuring of insurance within the state of New York. The contract here may be construed as made in a foreign state for the benefit of a third party. It may be that the state could provide as a condition of obtaining a license that no licensee could insure cars within the state of New York, but the statute does not cover such a case.

We adhere to our original decision.

Judge ROGERS, because of illness, has taken no part in this decision, though he presided at the time of the reargument.