## ALLGEYER *v.* LOUISIANA.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 446.   Submitted January 6, 1897. — Decided March 1, 1897.

The provision in act No. 66 of the Louisiana laws of 1894 that any person, firm or corporation . . . who in any manner whatever does an act in that State to effect, for himself or for another, insurance on property then in that State, in any marine insurance company which has not complied in all respects with the laws of the State, shall be subject to a fine, etc., when applied to a contract of insurance made in the State of New York, with an insurance company of that State, where the premiums were paid, and where the losses were to be paid, is a violation of the Constitution of the United States.

*Hooper* v. *California,* 155 U. S. 648, distinguished from this case; and it is further held that, by the decision in this case it is not intended to

throw any doubt upon, or in the least to shake the authority of that case.

When or how far the police power of the State may be legitimately exercised with regard to such subjects must be left for determination in each case as it arises.

THE legislature of Louisiana, in the year 1894, passed an act known as act No. 66 of the acts of that year. It is entitled " An act to prevent persons, corporations or firms from dealing with marine insurance companies that have not complied with law."

The act reads as follows: "*Be it enacted by the General Assembly of the State of Louisiana*, That any person, firm or corporation who shall fill up, sign or issue in this State any certificate of insurance under an open marine policy, or who in any manner whatever does any act in this State to effect, for himself or for another, insurance on property, then in this State, in any marine insurance company which has not complied in all respects with the laws of this State, shall be subject to a fine of one thousand dollars, for each offence, which shall be sued for in any competent court by the attorney general for the use and benefit of the charity hospitals in New Orleans and Shreveport."

By reason of the provisions of this act, the State of Louisiana on the 21st of December, 1894, filed its petition in one of the courts of first instance for the parish of Orleans, and alleged, in substance, that the defendants, E. Allgeyer & Co., had violated the statute by mailing in New Orleans a letter of advice or certificate of marine insurance on the 27th of October, 1894, to the Atlantic Mutual Insurance Company of New York, advising that company of the shipment of 100 bales of cotton to foreign ports in accordance with the terms of an open marine policy, etc. The State sought to recover for three violations of the act the sum of three thousand dollars.

The defendants filed an answer, in which, among other things, they averred that the above-named act was unconstitutional in that it deprived them of their property without due process of law, and denied them the equal protection of

the laws in violation of the constitution of the State of Lou-
isiana and also of the Constitution of the United States. They
also set up that the business concerning which defendants
were sought to be made liable, and the contracts made in
reference to such business, were beyond the jurisdiction of the
State of Louisiana, and that the defendants were not amena-
ble to any penalties imposed by its laws; that the contracts
of insurance made by defendants were made with an insurance
company in the State of New York, where the premiums were
paid, and where the losses thereunder, if any, were also to be
paid; that the contracts were New York contracts, and that
under the Constitution of the United States the defendants
had the right to do and perform any act or acts within the
State of Louisiana which might be necessary and proper for
the execution of those contracts, and that in so far as the act
No. 66 of the general assembly of the State of Louisiana of
the year 1894 might be construed to prevent or interfere with
the execution of such contracts, the same was unconstitutional
and in violation of the constitution of both the State of Lou-
isiana and the United States.

The case was tried upon an agreed statement of facts, as
follows : The Atlantic Mutual Insurance Company is a cor-
poration, created by the laws of the State of New York and
domiciled and carrying on business in that State, and the
defendants made a contract with that company for an open
policy of marine insurance for $200,000, on account of them-
selves, and to cover cotton in bales purchased and shipped by
them on which drafts might be drawn for the purchaser, upon
"Whom It Might Concern." By the terms of the policy,
among other things it was stated : "Shipments applicable to
this policy, to be reported to this company by mail or tele-
graph the day purchased, warranted not to cover cotton in
charge of carriers on shore or during inland transportation.
No risk is to be insured by this policy until a letter signed by
————, and addressed to the president of this company, de-
tailing the name of the vessel, particulars of the shipment,
with description of the property and amount to be insured, is
deposited in the post office at ————, which must be done

while the property is in good safety, and in all cases prior to the departure of the risk from ———; a duplicate of such letter to be sent by the following mail. A new and separate policy to be issued for each risk, the premium on which is to be paid in cash upon the delivery of such policy in New York to E. Allgeyer & Company."

The Atlantic Mutual Insurance Company is engaged in the business of marine insurance, and has appointed no agent in the State of Louisiana, and has not complied with the conditions required by the laws of that State for the doing of business within the same by insurance companies incorporated and domiciled out of the State.

On the 23d of October, 1894, the defendants mailed to that company a communication, stating insurance was wanted by defendants for account of same (the open policy); loss, if any, payable at Paris, in French currency, etc., for $3400 on 100 bales of cotton, which, at the time of the communication, were within the State of Louisiana. The premiums to be paid under the contract of insurance and the loss or losses under the same were payable in the city of New York, the premiums being remitted by the defendants from New Orleans by exchange.

Defendants are exporters of cotton from the port of New Orleans to ports in Great Britain and on the continent of Europe; they sell cotton in New Orleans to purchasers at said ports. For the price of every sale of cotton made by them they, in accordance with the general custom of business, draw a bill of exchange against the purchaser, attaching to the same the bill of lading for the cotton and an order on the Atlantic Mutual Insurance Company for a new and separate policy of insurance, spoken of in the open policy, and the form of the said order is as follows:

"Attached to draft No. ——— on ——— from E. Allgeyer & Co., New Orleans, 189, to Atlantic Mutual Ins. Co., New York.

"Marks and numbers, ———.

"Please deliver to ——— ——— or order special policy for

$—— on —— bales cotton per —— from New Orleans
to ——.

"Respectfully,
           (Signed)   "E. ALLGEYER & Co.,
                   "Per —— ——."

This bill of exchange, with the bill of lading attached, is sometimes negotiated with banks in the city of New York; sometimes it is not negotiated at all, but forwarded direct for collection from the purchaser of the cotton. The bill of exchange, with bill of lading and order for insurance attached, in either case is sent from New Orleans first to New York, where, after its negotiation or before being forwarded from thence for collection, the order for insurance is presented to the Atlantic Mutual Insurance Company. Upon this showing the insurance company in New York issues and delivers to the holder of the exchange and bill of lading when the former has been negotiated, or to the agent of defendant when the exchange has not been negotiated, a new and a separate policy of insurance for the cotton, in accordance with the contract made with the defendants and evidenced by the policy above mentioned and described. This new and separate policy, when received, is attached to the bill of exchange. The exchange cannot be negotiated in New York unless it is accompanied by both the bill of lading and order for insurance, and unless the new and separate policy issued by the company is attached to it the purchaser of the cotton is under no obligation to pay the bill drawn on him for the price of the cotton. The new and separate policy delivered to the holder of the exchange and bill of lading in New York, or to defendants' agent there, as the case may be, is for the benefit of the holder of the latter; or of defendants, according as the exchange has been negotiated or not. The holder of the exchange becomes the owner of the cotton covered by the bill of lading attached and is the owner of the policy of insurance covering the same, in the event of a loss within the terms of the policy.

The business thus described is conducted as above by the general custom and agreement of all parties concerned.

The court of first instance before which the trial was had ordered that plaintiff's demand be rejected and that judgment in favor of the defendants be given. An appeal was taken from that judgment to the Supreme Court of the State, which, after argument before it and due consideration, reversed the judgment of the court below and gave judgment in favor of the plaintiff for $1000, as for one violation of the statute, being the only one which was proved. *State* v. *Allgeyer*, 48 La. Ann. 104. The plaintiffs in error ask a review in this court of the judgment entered against them by directions of the Supreme Court of Louisiana.

*Mr. Branch K. Miller* for plaintiffs in error.

*Mr. M. J. Cunningham*, Attorney General of the State of Louisiana, and *Mr. E. Howard McCaleb*, for defendant in error.

MR. JUSTICE PECKHAM, after stating the case, delivered the opinion of the court.

There is no doubt of the power of the State to prohibit foreign insurance companies from doing business within its limits. The State can impose such conditions as it pleases upon the doing of any business by those companies within its borders, and unless the conditions be complied with the prohibition may be absolute. The cases upon this subject are cited in the opinion of the court in *Hooper* v. *California*, 155 U. S. 648.

A conditional prohibition in regard to foreign insurance companies doing business within the State of Louisiana is to be found in article 236 of the constitution of that State, which reads as follows: "No foreign corporation shall do any business in this State without having one or more known places of business, and an authorized agent or agents in the State, upon whom process may be served."

It is not claimed in this suit that the Atlantic Mutual Insurance Company has violated this provision of the constitution by doing business within the State.

In the *State of Louisiana* v. *Williams*, 46 La. Ann. 922, the Supreme Court of that State held that an open policy of marine insurance, similar in all respects to the one herein described, and made by a foreign insurance company, not doing business within the State and having no agent therein, must be considered as made at the domicil of the company issuing the open policy, and that where in such case the insurance company had no agent in Louisiana it could not be considered as doing an insurance business within the State.

The learned counsel for the State also admits in his brief the fact that the contract (*i.e.* the open policy) was entered into at New York City.

In the course of the opinion delivered in this case by the Supreme Court of Louisiana that court said:

"The open policy in this case is conceded to be a New York contract; hence the special insurance effected on the cotton complained of here was a New York contract.

"The question presented is the simple proposition whether under the act a party while in the State can insure property in Louisiana in a foreign insurance company, which has not complied with the laws of the State, under an open policy — the special contract of insurance — and the open policy being contracts made and entered into beyond the limits of the State.

&ast;  &ast;  &ast;  &ast;  &ast;

"We are not dealing with the contract. If it be legal in New York, it is valid elsewhere. We are concerned only with the fact of its having been entered into by a citizen of Louisiana while within her limits affecting property within her territorial limits. It is the act of the party, and not the contract, which we are to consider. The defendants who made the contract did so while they were in the State, and it had reference to property located within the State. Such a contract is in violation of the laws of the State, and the defendants who made it were within the jurisdiction of the State, and must be necessarily subject to its penalties, unless there is some inhibition in the Federal or state constitution, or that it violates one of those inalienable rights relat-

ing to persons and property that are inherent, although not expressed, in the organic law. It does not forbid the carrying on by the insurance company of its legalized business within the State. It is a means of preventing its doing so without subscribing to certain conditions which are recognized as legitimate and proper. It does not destroy the constitutional right of the citizens of New York to do business within the State of Louisiana or of the citizens of Louisiana from insuring property. It says to the citizens of New York engaged in insurance business that they must, like its own citizens, pay a license and have an authorized agent in the State as prerequisite to their doing said business within its State, and says to its own citizens: You shall not make a contract while in the State with any foreign insurance company which has not complied with the laws. You shall not in this manner contravene the public policy of the State in aiding and assisting in the violation of the laws of the State. The sovereignty of the State would be a mockery if it had not the power to compel its citizens to respect its laws.

\*   \*   \*   \*   \*

"The defendants while in the State undoubtedly insured their property located in the State in a foreign insurance company under an open policy. The instant the letter or communication was mailed or telegraphed the property was insured. The act of insurance was done within the State and the offence denounced by the statute was complete.

\*   \*   \*   \*   \*

"There is in the statute an apparent interference with the liberty of defendants in restricting their rights to place insurance on property of their own whenever and in what company they desired; but in exercising this liberty they would interfere with the policy of the State that forbids insurance companies which have not complied with the laws of the State from doing business within its limits. Individual liberty of action must give way to the greater right of the collective people in the assertion of well-defined policy, designed and intended for the general welfare."

The general contract contained in the open policy, as well

as the special insurance upon each shipment of goods of which notice is given to the insurance company, being contracts made in New York and valid there, the State of Louisiana claims notwithstanding such facts that the defendants have violated the act of 1894, by doing an act in that State to effect for themselves insurance on their property then in that State in a marine insurance company which had not complied in all respects with the laws of that State, and that such violation consisted in the act of mailing a letter or sending a telegram to the insurance company in New York describing the cotton upon which the defendants desired the insurance under the open marine policy to attach. It is claimed on the part of the State that its legislature had the power to provide that such an act should be illegal and to subject the offender to the penalties provided in the statute. It is said by the Supreme Court that the validity of such a statute has been decided in principle in this court in the case of *Hooper* v. *California*, 155 U. S. 648.

We think the distinction between that case and the one at bar is plain and material. The State of California made it a misdemeanor for a person in that State to procure insurance for a resident of the State from an insurance company not incorporated under its laws, and which had not filed a bond required by those laws relative to insurance. Hooper was a resident of San Francisco and was the agent of the firm of Johnson & Higgins, who were insurance brokers residing and having their principal place of business in the city of New York, but having also a place of business in the city and county of San Francisco, of which the defendant had charge as their employé and agent. In response to a request from a Mr. Mott, a resident of the State of California, the defendant Hooper procured through his principals, Johnson & Higgins, an insurance upon the steamer Alliance, belonging to said Mott, in the China Mutual Insurance Company, which was a company not then and there incorporated under the laws of California, and not having itself or by its agent filed the bond required by those laws relating to insurance. The policy was delivered by the defendant Hooper to Mott, the insured, at

San Francisco, who thereupon paid Hooper, as agent of Johnson & Higgins, the premium for the insurance. The case states that " all the verbal acts of Mott, the insured, and also of the defendant and all his acts as agent in procuring said insurance, were done in the city and county of San Francisco." The court held that the whole transaction amounted to procuring insurance within the State of California by Hooper, residing there and for a resident in the State, from an insurance company not incorporated under its laws and which had not filed the bond required by the laws of the State relative to insurance; that Hooper, the defendant, acted as the agent of his principals in New York City, who were average adjusters and brokers there, and who had a place of business in San Francisco, and that Hooper, as such broker, having applied for the insurance to his principals in New York City, received the policy from them for delivery in San Francisco, and the premium was there paid.

Upon the question as to the place where the contract was made, Mr. Justice White, speaking for the court said : " It is claimed, however, that, irrespective of this [commerce] clause, the conviction here was illegal, first, because the statute is by its terms invalid, in that it undertakes to forbid the procurement of a contract outside of the State; and, secondly, because the evidence shows that the contract was in fact entered into without the territory of California. The language of the statute is not fairly open to this construction. It punishes 'every person who in this State procures or agrees to procure for a resident of this State any insurance,' etc. The words 'who in this State' cannot be read out of the law in order to nullify it under the Constitution."

In the case before us the contract was made beyond the territory of the State of Louisiana, and the only thing that the facts show was done within that State was the mailing of a letter of notification, as above mentioned, which was done after the principal contract had been made.

The distinction between a contract made within and that made without the State is again referred to by Mr. Justice White in the same case as follows : " It is said that the

right of a citizen to contract for insurance for himself is guaranteed by the Fourteenth Amendment, and that, therefore, he cannot be deprived by the State of the capacity to so contract through an agent. The Fourteenth Amendment, however, does not guarantee the citizen *the right to make within his State, either directly or indirectly, a contract, the making whereof is constitutionally forbidden by the State. The proposition that, because a citizen might make such a contract for himself beyond the confines of his State, therefore he might authorize an agent to violate in his behalf the laws of his State, within her own limits, involves a clear non sequitur, and ignores the vital distinction between acts done within and acts done beyond a State's jurisdiction.*"

We do not intend to throw any doubt upon or in the least to shake the authority of the *Hooper case,* but the facts of that case and the principle therein decided are totally different from the case before us. In this case the only act which it is claimed was a violation of the statute in question consisted in sending the letter through the mail notifying the company of the property to be covered by the policy already delivered. We have then a contract which it is conceded was made outside and beyond the limits of the jurisdiction of the State of Louisiana, being made and to be performed within the State of New York, where the premiums were to be paid and losses, if any, adjusted. The letter of notification did not constitute a contract made or entered into within the State of Louisiana. It was but the performance of an act rendered necessary by the provisions of the contract already made between the parties outside of the State. It was a mere notification that the contract already in existence would attach to that particular property. In any event, the contract was made in New York, outside of the jurisdiction of Louisiana, even though the policy was not to attach to the particular property until the notification was sent.

It is natural that the state court should have remarked that there is in this "statute an apparent interference with the liberty of defendants in restricting their rights to place

insurance on property of their own whenever and in what company they desired." Such interference is not only apparent, but it is real, and we do not think that it is justified for the purpose of upholding what the State says is its policy with regard to foreign insurance companies which had not complied with the laws of the State for doing business within its limits. In this case the company did no business within the State, and the contracts were not therein made.

The Supreme Court of Louisiana says that the act of writing within that State, the letter of notification, was an act therein done to effect an insurance on property then in the State, in a marine insurance company which had not complied with its laws, and such act was, therefore, prohibited by the statute. As so construed we think the statute is a violation of the Fourteenth Amendment of the Federal Constitution, in that it deprives the defendants of their liberty without due process of law. The statute which forbids such act does not become due process of law, because it is inconsistent with the provisions of the Constitution of the Union. The liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned.

It was said by Mr. Justice Bradley, in *Butchers' Union Company* v. *Crescent City Company*, 111 U. S. 746, 762, in the course of his concurring opinion in that case, that "The right to follow any of the common occupations of life is an inalienable right. It was formulated as such under the phrase 'pursuit of happiness' in the Declaration of Independence, which commenced with the fundamental proposition that 'all men are created equal, that they are endowed by their Creator with certain, inalienable rights; that among these are life,

liberty and the pursuit of happiness.' This right is a large ingredient in the civil liberty of the citizen." Again, on page 764, the learned justice said : " I hold that the liberty of pursuit — the right to follow any of the ordinary callings of life — is one of the privileges of a citizen of. the United States." And again, on page 765 : " But if it does not abridge the privileges and immunities of a citizen of the United States to prohibit him from pursuing his chosen calling, and giving to others the exclusive right of pursuing it, it certainly does deprive him (to a certain extent) of his liberty; for it takes from him the freedom of adopting and following the pursuit which he prefers; which, as already intimated, is a material part of the liberty of the citizen." It is true that these remarks were made in regard to questions of monopoly, but they well describe the rights which are covered by the word "liberty" as contained in the Fourteenth Amendment.

Again, in *Powell v. Pennsylvania*, 127 U. S. 678, 684, Mr. Justice Harlan, in stating the opinion of the court, said: " The main proposition advanced by the defendant is that his enjoyment upon terms of equality with all others in similar circumstances of the privilege of pursuing an ordinary calling or trade, and of acquiring, holding and selling property, is an essential part of his rights of liberty and property, as guaranteed by the Fourteenth Amendment. The court assents to this general proposition as embodying a sound principle of constitutional law." It was there held, however, that the legislation under consideration in that case did not violate any of the constitutional rights of the plaintiff in error.

The foregoing extracts have been made for the purpose of showing what general definitions have been given in regard to the meaning of the word "liberty" as used in the amendment, but we do not intend to hold that in no such case can the State exercise its police power. When and how far such power may be legitimately exercised with regard to these subjects must be left for determination to each case as it arises.

Has not a citizen of a State, under the provisions of the Federal Constitution above mentioned, a right to contract out-

side of the State for insurance on his property — a right of which state legislation cannot deprive him? We are not alluding to acts done within the State by an insurance company or its agents doing business therein, which are in violation of the state statutes. Such acts come within the principle of the *Hooper case (supra)*, and would be controlled by it. When we speak of the liberty to contract for insurance or to do an act to effectuate such a contract already existing, we refer to and have in mind the facts of this case, where the contract was made outside the State, and as such was a valid and proper contract. The act done within the limits of the State under the circumstances of this case and for the purpose therein mentioned, we hold a proper act, one which the defendants were at liberty to perform and which the state legislature had no right to prevent, at least with reference to the Federal Constitution. To deprive the citizen of such a right as herein described without due process of law is illegal. Such a statute as this in question is not due process of law, because it prohibits an act which under the Federal Constitution the defendants had a right to perform. This does not interfere in any way with the acknowledged right of the State to enact such legislation in the legitimate exercise of its police or other powers as to it may seem proper. In the exercise of such right, however, care must be taken not to infringe upon those other rights of the citizen which are protected by the Federal Constitution.

In the privilege of pursuing an ordinary calling or trade and of acquiring, holding and selling property must be embraced the right to make all proper contracts in relation thereto, and although it may be conceded that this right to contract in relation to persons or property or to do business within the jurisdiction of the State may be regulated and sometimes prohibited when the contracts or business conflict with the policy of the State as contained in its statutes, yet the power does not and cannot extend to prohibiting a citizen from making contracts of the nature involved in this case outside of the limits and jurisdiction of the State, and which are also to be performed outside of such jurisdiction; nor can the

State legally prohibit its citizens from doing such an act as writing this letter of notification, even though the property which is the subject of the insurance may at the time when such insurance attaches be within the limits of the State. The mere fact that a citizen may be within the limits of a particular State does not prevent his making a contract outside its limits while he himself remains within it. *Milliken* v. *Pratt*, 125 Mass. 374; *Tilden* v. *Blair*, 21 Wall. 241. The contract in this case was thus made. It was a valid contract, made outside of the State, to be performed outside of the State, although the subject was property temporarily within the State. As the contract was valid in the place where made and where it was to be performed, the party to the contract upon whom is devolved the right or duty to send the notification in order that the insurance provided for by the contract may attach to the property specified in the shipment mentioned in the notice, must have the liberty to do that act and to give that notification within the limits of the State, any prohibition of the state statute to the contrary notwithstanding. The giving of the notice is a mere collateral matter; it is not the contract itself, but is an act performed pursuant to a valid contract which the State had no right or jurisdiction to prevent its citizens from making outside the limits of the State.

The Atlantic Mutual Insurance Company of New York has done no business of insurance within the State of Louisiana and has not subjected itself to any provisions of the statute in question. It had the right to enter into a contract in New York with citizens of Louisiana for the purpose of insuring the property of its citizens, even if that property were in the State of Louisiana, and correlatively the citizens of Louisiana had the right without the State of entering into contract with an insurance company for the same purpose. Any act of the state legislature which should prevent the entering into such a contract, or the mailing within the State of Louisiana of such a notification as is mentioned in this case, is an improper and illegal interference with the conduct of the citizen, although residing in Louisiana, in his right to contract and to

carry out the terms of a contract validly entered into outside and beyond the jurisdiction of the State.

In such a case as the facts here present the policy of the State in forbidding insurance companies which had not com- plied with the laws of the State from doing business within its limits cannot be so carried out as to prevent the citizen from writing such a letter of notification as was written by the plaintiffs in error in the State of Louisiana, when it is written pursuant to a valid contract made outside the State and with reference to a company which is not doing business within its limits.

For these reasons we think the statute in question, No. 66 of the Laws of Louisiana of 1894, was a violation of the Federal Constitution, and afforded no justification for the judgment awarded by that court against the plaintiffs in error. That judgment must, therefore, be

*Reversed, and the case remanded to the Supreme Court of Louisiana for further proceedings, not inconsistent with this opinion.*