## VALLE et al. v. STENGEL et al.
### No. 9698.

United States Court of Appeals
Third Circuit.

Argued Nov. 16, 1948.

Decided Aug. 10, 1949.

698

Hiram Elfenbein, Jersey City, N. J. (Meyer Pesin and Hiram Elfenbein, Jersey City, N. J., on the brief), for appellants.

Albert S. Gross, Hackensack, N. J., for appellees.

Before BIGGS, Chief Judge, and GOOD-RICH and O'CONNELL, Circuit Judges.

BIGGS, Chief Judge.

The complaint in the instant case originally consisted of twenty-six counts and is unnecessarily long and prolix. Jurisdiction is based on R.S. Sections 1977, 1978, and 1979, §§ 41, 42 and 43 of Title 8 U.S.C.A.,[1] and on Section 41(12) of Title 28 U.S.C.A.[2] The plaintiffs allege that they were denied rights guaranteed to them by the Fourteenth Amendment and by Article IV, Section 2, clause 1, or the Constitution of the United States. In count 26 the plaintiffs seek an injunction restraining the defendants from denying to the plaintiffs or any of them rights guaranteed them by the Constitution on the ground of race or color. They ask damages in the other counts. The plaintiffs have abandoned on this appeal counts 17, 24 and 25. Counts 18 to 23 were amended and consolidated. The complaint was dismissed as not stating a cause of action.[3] The plaintiffs have appealed.

[1] Respectively as follows: R.S. Section 1977, R.S. Section 1978, and R.S. Section 1979; Act of May 31, 1870, 16 Stat. 144, Act of April 9, 1866, 14 Stat. 27, and Act of April 20, 1871, 17 Stat. 13, the Second, First and Fourth Federal Civil Rights Acts.

[2] Now Section 1343 of revised Title 28 U.S.C.A.

[3] See D.C., 75 F.Supp. 543. In accordance with its opinion the court below on March 8, 1948 entered an order dismissing all of the twenty-six counts except 18 and 19 and 22 to 25, inclusive. The order of March 8, 1948 also granted leave to the plaintiffs to amend these counts to include allegations that Stengel falsely imprisoned and detained the plaintiffs, Scott, Horowitz and Peck "under color of statute or pretense of law to deprive the plaintiffs of a constitutional right * * *". D.C., See 75 F.Supp. at pp. 545-546. An amendment was made to the complaint on March 27, 1948. The amendment contained allegations that Stengel "was acting under color and pretense of law * * *". Thereafter, on April 7, 1948, the amended complaint was also dismissed "for the reasons stated in the opinion of this court filed on February 5, 1948." Since the record shows no opinion was filed by the court below on February 5, 1948 we conclude that the opinion referred to was that filed on February 9, 1948, reported in 75 F.Supp. at pages 543 et seq. The appeal at bar is taken from both orders, viz., from that of March 8, 1948 as well as that of April 7, 1948.

The following appears from the pertinent allegations. The corporate defendant, Rosecliff Realty Co., Inc. (Rosecliff), operated Palisade Amusement Park in the Boroughs of Fort Lee and Cliffside Park, New Jersey. The individual defendants, the Rosenthals and Halpin, were managers of the park. The individual defendant, Stengel, was the Chief of Police of the Borough of Fort Lee. The plaintiffs, Valle, Scott, Taylor and Cox, are Negroes. The plaintiffs Horowitz, Chase and Peck are white persons. The plaintiff Ravin was a newspaper reporter and his racial origin is not indicated nor is that of the plaintiffs, Robinson and Young. All the plaintiffs are citizens of the State of New York. Palisade Amusement Park is a "private" park; that is to say, it is not operated by the State of New Jersey or any governmental agency. The park was one, however, which admitted members of the public upon the payment of fees. The park contained a swimming pool and persons who were admitted to the park were admitted to the pool upon the payment of an additional fee.[4]

The plaintiffs, both Negroes and white persons, were admitted to the park. They sought admission to the pool. It is alleged that admission was refused them on the ground that the party included Negroes. Valle was in possession of "a duly purchased ticket" to the pool as was Scott. Nonetheless they were not admitted. The defendant, Stengel, as Chief of Police of the Borough of Fort Lee, "aided and abetted" the corporate defendant and the managing defendants in refusing the plaintiffs admission to the pool and "aided and abetted" in the ejectment of the plaintiffs from the park, assaulting them and imprisoning them "falsely".

In every count relied on by the plaintiffs it is alleged that the defendant, Stengel, was the Chief of Police of the Borough of Fort Lee, and that his subordinate policemen were acting pursuant to his orders. In the consolidated and amended counts it is alleged that " * * * Stengel was the Chief of Police of the Borough of Fort Lee in the State of New Jersey and as such was an officer and agent and representative of the * * * Borough [of Fort Lee] and of the State of New Jersey, charged with the enforcement of the customs, usages, laws and statutes of the said State; and in all the events and actions herein set forth he was acting under color and pretense of law and was enforcing and applying the unlawful and discriminatory practices herein mentioned against Negroes in New Jersey and against the plaintiffs as citizens and residents of New York State, the laws of New Jersey and of the United States to the contrary notwithstanding."[5]

We will endeavor first to classify the issues presented by the prolix complaint. The plaintiffs state in their brief:[6] "The gist of the complaint's various original and amended counts is that the plaintiffs were denied *the right to make and enforce the same contracts which whites were allowed to make.*" This statement does not cover the pleading. The complaint as amended alleges (1) refusal to permit the plaintiffs to make contracts (i. e., to purchase tickets) for the use of the swimming pool, which other persons were permitted to make, on the ground that some of the plaintiffs were Negroes;[7] (2) refusal to honor contracts (i. e., swimming pool tickets, "duly purchased") because the persons tendering them and seeking admission to the pool were Negroes;[8] (3) assaults upon plaintiffs, both Negroes and white persons, because the Negroes, accompanied by the white persons, were seeking admission to the pool,[9] and (4) false imprisonment.[10]

It is asserted by the plaintiffs that grounds (1) and (2), supra, find support in

---

[4] The complaint alleges also that Rosecliff and the managing defendants represented the park and the pool to be places of "public amusement" by signs and advertisements "in New York, New Jersey and in interstate commerce * * *".

[5] See paragraph 12 of the amendment.

[6] See page 3.

[7] See consolidated counts 18 to 23 inclusive.

[8] See counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13 and 14, and paragraph 13 of the amendment.

[9] See paragraph 14 of the amendment.

[10] See paragraph 14 of the amendment.

R.S. Section 1977,[11] and in R.S. Section 1978,[12] and that the statutes cited are bottomed in turn on the equal protection of the laws clause of the Fourteenth Amendment and on Clause 1 of Section 2 of Article IV of the Constitution of the United States providing that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." It would seem, though it is not clear from the briefs of the plaintiffs or from their oral argument, that points (3) and (4), supra, are also based by the plaintiffs on R.S. Sections 1977 and 1978.

The plaintiffs contend, first, that the complaint alleges that the defendants acted under color and pretense of law which is enough to give validity to their suit, and, second, that under Article IV, Section 2, clause 2 of the Constitution, Section 43 of Title 8 U.S.C.A., R.S. Section 1979, it is unnecessary to allege in the complaint that the defendants acted under color or pretense of law. The second ground asserted by the plaintiffs, however, is not in the case for it is alleged in the complaint in respect to every plaintiff that Stengel, the Chief of Police aided and abetted the managing defendants in consummating the acts of which the plaintiffs complain. We, therefore, will not discuss the second ground.

The argument on the first point is as follows: Stengel was Chief of Police of the Borough of Fort Lee and both he and his subordinate policemen acted in official capacities clothed with the authority of the State of New Jersey lawfully transmitted by it to the Borough of Fort Lee as a subordinate governing body; that the acts of Stengel and his subordinates in aiding and abetting the corporate defendant and the managing defendants in refusing to permit the plaintiffs to contract to use the pool, in denying the plaintiffs access to the pool when some of them had already contracted to use it, and in ejecting the plaintiffs from the park and assaulting and falsely imprisoning them or some of them, necessarily were acts done under color or pretense of law.

The plaintiffs particularize by asserting that by aiding and abetting the managing defendants and the corporate defendant, Stengel and his subordinates denied the plaintiffs the right to make and enforce contracts within the purview of R.S. Section 1977, and that the use of the swimming pool under a ticket of admission held by one of them, i. e., under a ticket "duly purchased", is the equivalent of a *lease,* however temporary, of the real and personal property constituting the pool within the purview of Section 1978; or is at least a *holding* [13] within the terms of the statute.

The trial court referring to the first [14] and second sections of the Fifth Civil Rights Act, Act of March 1, 1875, 18 Stat. 335, observed that these sections had been declared unconstitutional by the Supreme Court in the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, and concluded that the plaintiffs had not stated a cause of action because the defendants had not acted under color of law. The court said, 75 F.Supp. at page 545, that "It cannot be seriously urged that the action of the defendants was 'under color of statute'", because their actions violated the laws of New Jer-

---

[11] "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 8 U.S.C.A. § 41.

[12] "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 8 U.S.C.A. § 42.

[13] The phrase of the statute is "to hold".

[14] Section 1 states: "That all persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, public conveyances on land or water, theaters, and other places of public amusement; subject only to the conditions and limitations established by law, and applicable alike to citizens of every race and color, regardless of any previous condition of servitude."

sey, in particular R.S. 10:1–3, N.J.S.A., which provides that no proprietor of a place of public resort or amusement " * * * shall directly or indirectly refuse, withhold from, or deny to, any person any of the accommodations, advantages, facilities or privileges thereof, * * * on account of race, creed or color.", R.S. 10:1–6, N.J.S.A., providing substantial penalties for violation of the statute just quoted.[15] In short the court below held that a borough police officer could not act under color of law when he acted in violation of a state statute.

We think the decision of the court below must be reversed. The allegations of the complaint as amended and the inferences to be drawn therefrom, upon a motion to dismiss, must be taken most favorably to the plaintiffs. It is a fair inference to be drawn from the pleading that Stengel as Chief of Police of the Borough of Fort Lee and his subordinates were acting in an official capacity and purportedly pursuant to State law and that if Stengel had not been Chief of Police he would not have been called upon to act by his co-defendants and would not have acted. It is to be presumed on a motion to dismiss that an individual who is alleged to be the chief of police of a New Jersey borough is lawfully in office. A person who acts by virtue of an office conferred upon him under the authority of State law and purportedly pursuant to State law is acting under "color of law".[16] It is not alleged and we do not know, of course what law or statute of New Jersey Chief of Police Stengel was purportedly acting under when he subjected some of the plaintiffs to arrest and imprisonment. The provisions of R.S. 2:206–2, N.J.S.A., come immediately to mind as do those of R.S. 40:174–195, 196, N.J.S.A. These relate generally to arrests by police officers for minor breaches of the peace. On motion to dismiss, as here, the inferences are to be taken most strongly in the plaintiffs' favor and it is reasonable to infer that Stengel was acting pursuant to one of the statutes referred to in the previous sentence or under some similar act of the New Jersey Legislature. The pertinent facts must be developed at the trial.[17]

That a person who acts by virtue of an office conferred on him under the authority of State law and purportedly pursuant to State law acts under "color of law" was decided by the Supreme Court in Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495, 162 A.L.R. 1330, Mr. Justice Douglas saying, "It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." See United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, in which it was stated, "Misuse of power, possessed by virtue of

---

[15] See the decision of the Superior Court of New Jersey, Appellate Division, at No. A-19, September Term, 1948, in State v. Rosecliff Realty Co.

The decision referred to, 62 A.2d 488, reversing a lower court, was a suit brought by two of the present plaintiffs, Cox and Valle, based apparently on the very incidents complained of in the instant suit. The Superior Court of New Jersey held the New Jersey statutes referred to in this opinion to be valid and to operate for the benefit of Cox and Valle.

[16] R.S. Section 1979, like Section 43 of Title 8 U.S.C.A. uses the word "statute" in lieu of the word "law". See 8 U.S.C.A. § 43. Section 1 of the Fourth Civil Rights Act, Act of April 20, 1871, 17 Stat. 13, uses the phrase " * * * any person who, under color of any law, statute * * ".

The word "statute" employed in R.S. Section 1979 was obviously intended to embrace the phrase "any law, statute, * * *" of Section 1 of the Fourth Civil Rights Act. It is interesting to note that Section 1343(3) of revised Title 28, U.S.C.A., employs the earlier phrase, that of 17 Stat. 13.

[17] Mr. Justice Stone and Mr. Justice Cardozo in their concurring opinion in Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, at page 213, 55 S.Ct. 187, 193, 79 L.Ed. 281, stated, "We are in accord with the view that it is inexpedient to determine grave constitutional questions upon a demurrer to a complaint, or upon an equivalent motion, if there is a reasonable likelihood that the production of evidence will make the answer to the questions clearer." Such a likelihood exists in the instant case.

state law and made possible only because the wrongdoer is clothed with authority of state law, is action taken 'under color of' state law." While the prosecutions in both the Screws and Classic cases were based on Section 20 of the Criminal Code, Section 52, 18 U.S.C., 1940 ed. [now 18 U.S.C.A. § 242], this point is presently immaterial. Section 20 was Section 17 of the Second Civil Rights Act, Act of May 31, 1870, 16 Stat. 140. This is a criminal statute. The suit at bar is based on Section 1 of the Fourth Civil Rights Act, Act of April 20, 1871, 17 Stat. 13, now R.S. Section 1979, which is the civil counterpart of Section 20 of the Criminal Code. As we said in Picking v. Pennsylvania R. Co., 3 Cir., 151 F. 2d 240, 248, the decision of the Supreme Court in the Screws case gave *virile meaning* to the phrase "under color of any law." The fact that Stengel, a law-enforcement officer, was acting in defiance of the law of New Jersey as embodied in R.S. 10:1–1 et seq., N.J.S.A., will not serve as a defense and, since the complaint alleges in effect that he aided and abetted the corporate defendant and the managing defendants, his actions may be attributed to them and treated as their own. Cf. Hodges v. United States, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65.

█ It follows therefore that the plaintiffs were denied equal protection of the laws within the purview of the Fourteenth Amendment because they were Negroes or acting in association with Negroes when they attempted to gain admission to the pool at Palisade Park. They, or some of them, were ejected from the park, were assaulted and were imprisoned falsely, as alleged in the complaint, because they were Negroes or were in association with Negroes, and were denied the right to make or enforce contracts, all within the purview of and prohibited by the provisions of R.S. Section 1977. But any narrow interpretation of the Civil Rights Acts has been obliterated, we think, by the Screws decision. Cf. the Civil Rights Cases and the Hodges decision, supra.

█ The "privileges, or immunities" referred to in R.S. Section 1979 are the "Privileges and Immunities" of Article IV, Section 2, of the Constitution and the "privileges or immunities" of the Fourteenth Amendment. These "privileges and immunities" and "privileges or immunities", as was pointed out by Mr. Justice Miller in the Slaughter-House cases, 16 Wall. 36, 83 U.S. 36, 75, 21 L.Ed. 394, are the same as those to be first found in our constitutional history " * * * in the fourth of the Articles of the old Confederation." U. S.C.A., Constitution.[18] Mr. Justice Miller went on to say that "In the Constitution of the United States, * * * the corresponding provision is found in section two of the fourth article, in the following words: 'The citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States.' There can be but little question that the purpose of both these provisions is the same, and that the privileges and immunities intended are the same in each." See Nos. 7 and 22 of the Federalist Papers.

█ As was pointed out in the Slaughter-House Cases, 16 Wall. 36, 83 U.S. at pp. 76–77, 21 L.Ed. 394, quoting from the decision in Paul v. Virginia, 8 Wall. 168, 180, 19 L.Ed. 357, " 'The privileges and immunities which are common to the citizens of each State in the several States, by the provision in question, are those privileges and immunities which are common to the citizens in the latter States under their constitution and laws by virtue of their being citizens.' ", and in the case last cited it was also said that the privileges and immunities clause insures to the citizens " * * * in other States the same freedom possessed by the citizens of those States *in the acquisition and enjoy-*

---

[18] In pertinent part as follows: "Article IV. The better to secure and perpetuate mutual friendship and intercourse among the people of the different States in this Union, the free inhabitants of each of these States, * * * shall be entitled to all privileges and immunities of free citizens in the several States; and the people of each State shall have free ingress and regress to and from any other State, and shall enjoy therein all the privileges of trade and commerce * * *".

*ment of property and in the pursuit of happiness* [19]*;* and it secures to them in other States the equal protection of the laws". These are rights growing essentially out of citizenship of the United States and all that that citizenship implies. If a man cannot make or enforce a contract already made because of the interference of a State officer he is being denied a civil right. He cannot support himself or his family or earn a living under the system to which we adhere. The *liberty* involved is in fact the liberty of contract. Cf. Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832. To refuse to an individual the liberty of contract is to put him beyond the pale of capitalism. Thus ostracized, he cannot engage in the acquisition of property or in the pursuit of happiness. It is clear that the Supreme Court has held that the words "Privileges and Immunities" of Article IV, Section 2, protect the right of a citizen to engage in lawful commerce, trade or business without molestation or harassment. See Ward v. Maryland, 12 Wall. 163, 79 U.S. 418, 430, 20 L.Ed. 260. The "Privileges and Immunities" clause also guarantees the right of the individual citizen to engage in the pursuit of happiness. Paul v. Virginia, supra. The field of human rights covered by the privileges and immunities clause is indeed a broad one. The individual defendants, acting in concert, if the allegations of the complaint are to be believed, have denied to the plaintiffs the privileges and immunities of citizenship.

Such an interpretation falls, we think, into the general pattern of the Civil Rights Acts as incorporated in R.S. Sections 1977, 1978 and 1979. For example the phrase "to make contracts" of R.S. Section 1977 clearly shows that Congress had in mind much more than enforcing a contract, already made, by a legal proceeding. A contract is not often made in court. R. S. Section 1978 gives the citizen the right to enjoy real and personal property; that is to say, to deal with it in all ways not prohibited by law. The right to enjoy the "privileges and immunities" of citizenship, for the violation of which Section 43 imposes civil sanctions, covers, as we think we have demonstrated, the wide field of activities ordinarily engaged in by citizens. We think that Congress intended to confer on Negroes a civil status equivalent to that enjoyed by white persons. Such was the intention of the framers of the Civil Rights Amendments. We conclude that the position that we have taken is not invalidated by the decision of the Supreme Court in the Civil Rights cases, supra, in which Sections 1 and 2 of the Act of March 1, 1875, 8 Stat. 335, the Fifth Civil Rights Act, were held to be unconstitutional. It must be conceded that Congress by passing Section 1 of the Fifth Civil Rights Act endeavored to guarantee to the Negro citizen rights somewhat similar to those involved in the case at bar and in particular those relating to the right to engage in the pursuit of happiness. But in the instant case we are concerned with the reach of the Fourteenth Amendment, not with that of the Thirteenth, as was the Supreme Court in the Civil Rights Cases. In the instant case we are concerned with the actions of a chief of police holding his office by virtue of State law and acting under color of law within the purview of the Screws decision. By way of contrast it should be pointed out that in the Civil Rights Cases, 109 U.S. at page 23, 3 S.Ct. at page 30, 27 L.Ed. 835, Mr. Justice Bradley said: "The only question under the present head, therefore, is, whether the refusal to any persons of the accommodations of an inn, or a public conveyance, or a place of public amusement, by an individual, and without any sanction or support from any state law or regulation, does inflict upon such persons any manner of servitude, or form of slavery * * *." Mr. Justice Bradley, emphasized the fact that the interference with the individuals referred to in the Civil Rights Cases was not the action of a State. Cf. the circumstances at bar. It is apparent that the decision in the Civil Rights Cases does not control the instant litigation.

Quite apart from all of the foregoing, however, we cannot perceive how it can be held that the plaintiffs are not enti-

---

[19] Emphasis added.

tled to redress for it is clearly alleged that they have been denied equal protection of the laws under the New Jersey statute hereinbefore referred to. The statute known as the New Jersey Civil Rights statute, R. S. 10:1–2, N.J.S.A., quoted previously, provides that all persons within the jurisdiction of New Jersey shall be entitled to full and equal accommodations, facilities and privileges at any place of public amusement. Since, as we have demonstrated, Chief of Police Stengel was acting under color of law, albeit in direct violation of R.S. 10:1–2, N.J.S.A. we entertain no doubt that against the background of the "privileges or immunities" clause of the Fourteenth Amendment construed in the light of the Slaughter-House Cases, Paul v. Virginia and Ward v. Maryland, Stengel must be held to have deprived the plaintiffs of the equal protection of the laws. Any citizen of New Jersey was entitled to use the swimming pool.[20] It follows, therefore, that any citizen of the United States was entitled to use it. The plaintiffs are citizens of the United States as well as citizens of New York. The Slaughter-House Cases, 16 Wall. 36, 83 U.S. at pp. 78–79, 21 L.Ed. 394, and Paul v. Virginia, 8 Wall. at page 180, 19 L.Ed. 357. Chief of Police Stengel, if the allegations of the complaint are to be believed, denied the plaintiffs equal protection of the laws and the fact that the law, the protection of which he denied to them, was a statute of the State of New Jersey rather than a statute of the United States, is immaterial. We conclude, therefore, that the complaint does state a cause of action because it alleges that civil rights guaranteed to the plaintiffs by the Fourteenth Amendment and protected by the Civil Rights Acts were invaded by Stengel, acting under color of State law. The other individual defendants and the corporate defendant should be kept in the case as parties at this stage of the proceeding. The corporate defendant can act only through its agents, the individual defendants other than Stengel, and it is alleged that the other individual defendants caused

Stengel's acts of which the plaintiffs complain. It is probable that the status of corporate and individual liability will become much plainer when evidence is offered. See note 17, supra. What we have said disposes of the appeal.

The orders of the court below will be reversed.

O'CONNELL, Circuit Judge (concurring in part, dissenting in part).

Agreeing that, upon a motion to dismiss, the averments of the complaint must be taken to be admitted, I concur with the conclusions reached by the majority with respect to defendant Stengel. As to the other defendants, I am in accord with the statement of the lower court: "The plaintiffs may have a cause of action under the Act, but they have failed to properly assert it." I would affirm the district court as to these defendants.

[20] It will be observed that the Superior Court of New Jersey in State v. Rosecliff Realty Co., 62 A.2d, 488, 490, treated the park and the pool as the equivalent of a place of public accommodation or amusement.