Ada M. SCOTT, etc., Plaintiff,
United States of America,
Plaintiff-Intervenor,

v.

Joseph S. YOUNG, d/b/a Timberlake,
Defendant.

Civ. A. No. 3850.

United States District Court
E. D. Virginia,
Alexandria Division.

July 10, 1969.

Gary J. Greenberg, Justice Dept., Civil Rights Div., for United States. Robert M. Alexander, Arlington, Va., and Allison W. Brown, Jr., Washington, D. C., for plaintiff.

C. Vernon Spratley, Jr., U. S. Atty., John D. Schmidtlein, Asst. U. S. Atty., for intervenor.

La Rue Van Meter, Falls Church, Va., George S. Leonard, Washington, D. C., for defendant.

## MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

A consent decree was entered herein on December 5, 1966 enjoining the defendant, his agents, successors, employees and all those in active concert or participation with him from denying the full and equal enjoyment of all the goods, services, facilities, privileges, advantages and accommodations of Timberlake to members of the Negro race or to any other person on account of race, color, religion or national origin for so long as there remained located on the Timberlake premises the eating establishment previously maintained and operated by the defendant. Jurisdiction of the subject matter was retained by the Court.

Subsequently the defendant closed his eating facility and continued his racially discriminatory admission policy.

In August 1968 the United States filed a motion for further relief alleging that the defendant's policy of excluding non-white patrons from Timberlake violated § 201(b) (3) of the Civil Rights Act of 1964, contending that Timberlake is a place of "entertainment" as defined therein.

Shortly thereafter the original plaintiff filed a motion for further relief contending that defendant's racially discriminatory admission policy at Timberlake violated 42 U.S.C. §§ 1981 and 1982 as those provisions were construed by the Supreme Court of the United States in Jones v. Alfred H. Mayer Company, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

Both plaintiffs seek further injunctive relief.

The defendant first contends that the Court ought not to entertain the plaintiffs' motions because he has not violated the December 5th injunction—hence there is nothing pending before the Court for adjudication. The defendant further contends that Timberlake is not a place of entertainment as that word is used in the 1964 Civil Rights Act and that it is not within the scope of the Civil Rights Act of 1866.

The facts are not in dispute. They were fully developed by interrogatories and by exhibits filed herein.

Timberlake is a privately owned parcel of land located near Oakton, Virginia— approximately fifteen miles from the District of Columbia and the State of Maryland. The facility in question covers about twenty-three acres and includes two lakes used for swimming, diving, canoeing, fishing, picnicking and sunbathing. It is open to the general public from mid-May through mid-September. It attracts about sixty-five thousand persons per season and grosses about $50,000.00.

There are several floats or rafts located in the lakes, some of which have diving boards. Canoes may be rented by the hour. Inner tubes may be rented by the day. Although equipment therefor is not rentable, patrons may and do use the lakes for fishing and scuba or snorkel diving. The sandy beaches are used, among other things, for sunbathing and girl-watching activities. Umbrellas are available for rent on a daily basis. There are numerous picnic tables located at various places around the lakes which are rented to patrons—the patrons bring their own food and beverages—none is sold on the premises.

Admission fees are a dollar and a quarter for adults and fifty cents for children, with ninety per cent of the gross receipts coming from admissions.

Most of the patrons reach Timberlake by automobile. Although most come from Virginia, many come from Maryland, the District of Columbia and other states. Road signs are located in Virginia near interstate routes indicating the direction to Timberlake.

The defendant has advertised Timberlake in the Washington Evening Star on several occasions. This newspaper uses the United States mail facilities and is circulated generally in Metropolitan Washington.

The canoes and umbrellas were purchased from merchants in the District of Columbia.

Timberlake is and has been operated on a racially segregated basis at least since the effective date of the Civil Rights Act of 1964. Admission is secured through the admission booth upon paying the requisite fee. White members of the general public are routinely admitted. Negroes and other non-white persons are refused admission.

■■■ The defendant's contention that this Court lacks jurisdiction to entertain plaintiffs' motions is without merit. The Court in its order of 1966 expressly retained jurisdiction. Even if it had not so done, Rule 60(b) (6) of the Federal Rules of Civil Procedure would permit the Court to grant the additional relief requested upon proper showing.

**1008**

■ The Court finds that Timberlake is a place of entertainment within the meaning of § 201(b) (3) of the Civil Rights Act of 1964 and is thereby subject to the proscription of Title II of the Act—Timberlake provides recreational or other activities for the amusement or enjoyment of its patrons. See Miller v. Amusement Enterprises, Inc., 394 F.2d 342 (5th Cir. 1968).

The dictionary defines the word "entertainment" as the act of diverting, amusing or causing someone's time to pass agreeably. The services and facilities offered at Timberlake clearly fall within that definition. To hold that Timberlake is not a place of entertainment within the meaning of § 201(b) (3) of the Civil Rights Act of 1964 would violate the basic canon of statutory construction that words are presumed to be used in their ordinary sense.

Further reference is made to Daniel v. Paul, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318, decided by the Supreme Court of the United States on June 2nd of this year. That decision makes it clear that Timberlake is a place of entertainment as that word is used in the Civil Rights Act of 1964.

■ The facts here found further clearly establish that the operation of Timberlake affects commerce within the meaning of § 201(b) (3) of the Civil Rights Act of 1964. Timberlake makes itself available to all members of the general public. It is conceded that persons using the facilities at Timberlake travel on interstate highways in reaching the facility and that a substantial number cross state lines to get there. Further, Timberlake has in the past advertised in a newspaper having general circulation in Metropolitan Washington and these advertisements point out that Timberlake is easily accessible from the Capital Beltway.

It should be further noted that some of the equipment rented to the patrons was purchased from stores located in the District of Columbia.

■ From a reading of Jones v. Alfred H. Mayer Company, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 recently decided by the Supreme Court of the United States (1968), it would appear that the defendant's racially discriminatory admission policy deprives the plaintiff of the rights secured by 42 U.S.C. § 1981. That section on its face prohibits all private racially motivated conduct which denies or interferes with the Negro's right to enter into contracts to purchase that which is freely sold to white citizens. It is clear that under common law principles a ticket to a place of entertainment or recreation is regarded as a contract. That was the holding in Valle v. Stengel, 176 F.2d 697 (3rd Cir. 1949).

The relief prayed for by the plaintiffs will be granted.