JENKINS, Senior District Judge,
concurring and dissenting.
I concur with the majority opinion with one modest exception. I would reverse the order of the court below dismissing Ms. Foote’s jury award and reinstate her compensatory damages judgment of $200,000.
Section 1981 states that “[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens.” 42 U.S.C. § 1981 (1994). Section 1982 states that “[a]ll citizens of the United States shall have the same right ... as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.” 42 U.S.C. § 1982 (1994). Initially enacted pursuant to the Civil Rights Act of 1866, sections 1981 and 1982 were “intended [to protect] ... citizens of the United States in enjoyment of certain rights without discrimination on account of race, col- or, or previous condition of servitude,” United States v. Cruikshank, 92 U.S. 542, *1080 555, 23 L.Ed. 588 (1875), or because of their ancestry or ethnic characteristics, St Francis College v. Al-Khazraji, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), and to “confer on [African-Americans] a civil status equivalent to that enjoyed by white persons.” Valle v. Stengel, 176 F.2d 697, 703 (3d Cir.1949). The protection afforded by these statutes finds its roots in the Thirteenth and Fourteenth Amendments. See Runyon v. McCrary, 427 U.S. 160, 168-72, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (Thirteenth Amendment); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437-44, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (same); General Bldg. Contractors Ass’n v. Pennsylvania, 458 U.S. 375, 384-91, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (Fourteenth Amendment).
Although neither section 1981 or 1982 define “person” or “citizen,” respectively, the United States Supreme Court has provided useful guidance. In Arlington Heights v. Metropolitan Housing Development Corporation, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the Court stated that, for the purposes of standing under the Fourteenth Amendment, “a corporation ... has no racial identity and cannot be the direct target of the ... alleged, discrimination.” Id. at 263.
In today’s opinion, the majority disregards Arlington Heights in concluding that Africa House has standing because under sections 1981 and 1982, “the direct victim of the alleged discrimination, was Foote’s corporation, Africa House, rather than Foote herself.”
In this case, Africa House by itself cannot have standing to assert section 1981 and 1982 claims because, as Arlington Heights explains, a corporation cannot be the direct target or victim of racial discrimination. However, the Court in Arlington Heights did not address whether a corporation would have standing if it were an indirect target of racial discrimination, that is, whether a corporation has standing when it suffers an injury such as lost profits resulting from unlawful discrimination directed at a member of a protected class. Cases since Arlington Heights indicate that a corporation that is harmed by discriminatory action has standing to litigate that harm. See Hudson Valley Freedom Theater, Inc. v. Heimbach, 671 F.2d 702, 708 (2d Cir.1982) (Pierce, J., concurring) (“[U]nder the 14th Amendment and the statutes which seek to implement its purposes, any person, including a colorless corporate ‘person’, although not a member of a protected group, has an implied cause of action against any other person who, with racially discriminatory intent, causes ... it ... [an] injury.”). This view comports with the Court’s dictum in Arlington Heights and the purposes for which Congress enacted sections 1981 and 1982.
The majority relies on Gersman v. Group Health Association, Inc., 931 F.2d 1565 (D.C.Cir.1991), vacated on other grounds, 502 U.S. 1068, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992), to .hold that “Africa House has standing to assert discrimination claims under § 1981 and § 1982 where such discrimination is based on the race of one of its employees.”
I agree with the reasoning in Gersman,[1] and I agree that the jury correctly found *1081 that Africa House suffered an injury resulting from unlawful discrimination. However, the jury also found that the defendants had discriminated against Ms. Foote because of her race and that Ms. Foote suffered a compensable injury distinct from that suffered by Africa House.[2] Ms. Foote, as is required by our prior cases,[3] is a member of the protected class under sections 1981 and 1982 and was the direct target of the defendants’ racial discrimination whether she was acting in her individual capacity in seeking to enter into the prospective lease contract,[4] or was acting as agent for her corporation. She is entitled to redress for her own injuries that also fall clearly within the zone of interests protected by sections 1981 and 1982. The defendants caused injury both to Africa House and Ms. Foote by refusing to deal with Ms. Foote — a refusal the jury found to be racially motivated. Affirming the defendants’ liability to the corporate plaintiff, Africa House, acknowledges that the corporation suffered an injury resulting from unlawful discrimination — racial discrimination for which Ms. Foote served as the very human direct target.
In dismissing Ms. Foote’s claims, the majority relies on Bellows v. Amoco Oil Company, 118 F.3d 268 (5th Cir.1997). However, Bellows does not support the majority’s holding for several reasons. First, in Bellows, the jury found in favor of the defendant Amoco on the corporate plaintiffs section 1981 claim. The corporate plaintiff, Phillips Industrial Construc *1082 tors, Inc. (“PICI”), did not appeal the jury’s determination and was therefore not before the Fifth Circuit at all. As the court itself stated: “The obvious problem that Bellow faces with [his] argument, of course, is that the jury found that Amoco did not interfere with PICI’s contracts, or ability to contract, with Amoco on the basis of race.” Id. at 276. In other words, the court found that Bellow’s claim, as it was dependent on PICI’s dismissed claim against Amoco, was meritless on appeal. Second, the facts are distinguishable from the facts of the present case in that Bellow’s claim was one step removed from the cause of action as expressed by PICI. That is, in Bellows, plaintiff Bellow claimed that Amoco discriminated against him on the basis of his race by engaging in conduct that had the effect of terminating, modifying, or changing Bellow’s right to contract with PICI as distinguished from PICI’s right to contract with Amoco. Id. at 272-73.
Ms. Foote is not asserting that the defendants interfered with her right to contract with Africa House. Ms. Foote is asserting that she has an injury resulting directly from the defendants’ disciiminato-ry conduct towards her, separate and distinct from that suffered by Africa House — ■ an issue not raised or dealt with in Bellows or Gersman. Rather than her claim being “derivative of that of Africa House,” if anjdhing, Africa House’s claim is derivative of the unlawful discrimination Ms. Foote experienced firsthand in dealing with the defendants. Africa House could make no contract without her participation. The jury found that the defendants frustrated Ms. Foote’s efforts to obtain a new lease, and did so because of Ms. Foote’s race, thereby harming both Ms. Foote and Africa House.
The majority dismisses Ms. Foote’s harm as merely “a product of the economic damages which were suffered by the corporation.” Yet the uncontroverted testimony of Ms. Foote and other witnesses established that she became deeply disturbed beginning in September 1996 — before Africa House had suffered any actual economic loss. The jury found in Ms. Foote’s favor, awarding her $200,000 in damages.
The majority has simply substituted its judgment for that of the jury concerning whether Ms. Foote suffered the mental anguish that she and others testified to at trial as resulting from the discrimination she experienced.
I would therefore hold that both Añica House and Ms. Foote have standing to assert the section 1981 and 1982 causes of action against the defendants, and that the district court’s ruling as to Ms. Foote should be reversed and judgment in favor of Ms. Foote should be reinstated as to compensatory damages.

. Gersman adequately addresses the difficult issues raised in Arlington Heights. In Gers-man, the defendant argued that the corporation, CSI, did not have standing to bring a cause of action under section 1981 because CSI lacked a racial or religious identity. Gersman, 931 F.2d at 1568. The court de-dined to rule that “racial identity is a predicate to discriminatory harm” and instead approached the issue "by assuming that, if a corporation can suffer harm from discrimination, it has standing to litigate that harm.” Id. Addressing this issue further, the court stated
*1081 a party may suffer a legally cognizable injury from discrimination even where that party is not a member of a protected minority group. Thus, it is not necessary to determine whether CSI has a "racial identity.” [Given that a corporation exists as an entity separate from its employees, officers and stockholders,] [s]uch a query would lead to difficulties of determining what, in fact, constitutes a racial identity.... For example, in the present case, CSI alleges that it has a racial identity because it is operated and owned by Mr. and Mrs. Gersman, who are both Jewish. Yet the situation would be no different if Gentile shareholders owned CSI and [the defendant] ended the contractual relationship because the corporation had a single Jewish employee. Thus, CSI need not have a “Jewish identity,” or even have predominantly Jewish owners or employees, in order to suffer injury from [the defendant's] discriminatory actions.
Id. at 1570.

.The jury was instructed:
If you find that either or both of the Defendants discriminated on the basis of Plaintiffs’ race in the making or enforcement of a lease for the Tabor Center for which they were qualified, you may award reasonable compensation for the following: —financial losses (for either Plaintiff Tseghe Foote or Plaintiff Africa House);
—pain, suffering, and physical and emotional distress (for Plaintiff Tseghe Foote only).
If you find for the Plaintiffs, or either of them, on more than one claim for relief, you may award damages only once for the same business losses.
(Jt.App. vol. I-A, at 308, 310.)

. In this Circuit, a racial identity is the cornerstone of a section 1981 and 1982 cause of action and a necessary element of a plaintiff's prima facie case. See Shawl v. Dillards, Inc., No. 99-1409, 2001 WL 967887, at *2 (10th Cir. Aug.27, 2001) ("To establish a claim under § 1981, the plaintiffs must show that (1) they are members of a protected class .... ” (citing Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1101 (10th Cir.2001))).

. The majority bases its holding that the corporation was the direct victim of the alleged discrimination, in part, on the fact that the injury — the refusal to contract with or lease property — was suffered by Africa House, not Ms. Foote individually. However, the majority ignores evidence in the record that suggests that Ms. Foote leased space from the defendants under her own name', "Tseghe Foote, Tenant.” On the existing record, whether Africa House was to be the party to the prospective contract is ambiguous at best. (Jt.App. vol. X, at 2445-49.)